IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
May 2, 2017 Session

**TONNIE JELKS v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Madison County**
**No. C-16-114     Roy B. Morgan, Jr., Judge**

_____

**No. W2016-02078-CCA-R3-PC**

_____

Tonnie Jelks, the Petitioner, claims that the post-conviction court erred in dismissing his petition for post-conviction relief. The Petitioner claims that his guilty plea was not knowingly and voluntarily entered because trial counsel incorrectly advised him concerning his offender classification, failed to adequately investigate his case, failed to inform him of the elements of the charged offense, and failed to challenge a show-up identification procedure and because the State failed to file the notice of enhanced punishment mandated by Tennessee Code Annotated section 40-35-202(a). After a thorough review of the record and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and J. ROSS DYER, JJ., joined.

J. Noble Grant, III, Jackson, Tennessee, for the appellant, Tonnie Jelks.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Al Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Procedural History**

Pursuant to a negotiated plea agreement, the Petitioner pleaded guilty to attempted aggravated robbery and assault and received concurrent sentences of ten years'

confinement with a forty-five percent release eligibility for attempted aggravated robbery and eleven months and twenty-nine days for assault. The Petitioner filed a timely petition for post-conviction relief, counsel was appointed, and an amended petition was filed. In the pro se petition, the Petitioner alleged that his guilty plea was not entered voluntarily and knowingly, that the search of his person and subsequent arrest were unlawful, that the prosecutor failed to disclose evidence favorable to the Petitioner, that there was newly discovered evidence, and that he received ineffective assistance of counsel. The amended petition claimed the guilty plea was not entered voluntarily or knowingly and that the Petitioner received ineffective assistance of counsel.

## Post-Conviction Hearing

At the post-conviction hearing, trial counsel was called to testify by the Petitioner. Following arraignment, trial counsel reviewed the police report and an incident report, watched a video of the incident recorded by a camera at CVS pharmacy, and examined photographs of the victims taken at the hospital. According to trial counsel, he could not identify the Petitioner from the video.

Trial counsel agreed that the aggravating factor for the attempted robbery was serious bodily injury and that no deadly weapon was involved. There were two victims, a mother and her fourteen-year-old daughter. Trial counsel acknowledged that the police report stated that both victims were transported to the hospital "with minor injuries." When asked if the statement "with minor injuries" would raise a "red flag," counsel responded:

> That would have been something -- If this case had proceeded to trial, that would have been something I could have pointed out to the jury and argued to the jury. However, he was charged with attempted aggravated robbery and simple assault, so from that perspective, it didn't raise any red flags for that purpose.

Trial counsel agreed that he did not investigate the victims' medical records, and he could not recall if he discussed lesser-included offenses with the Petitioner. He went over with the Petitioner each element of the crimes charged, including the serious bodily injury element, the Petitioner's offender classification, and the range of punishment for the charges.

Before trial counsel was appointed, the Petitioner filed a pro se motion to reduce bond. The "State's Response to Motion for Bond Reduction," a copy of which was provided to trial counsel during discovery, included within the body of the response a photocopy of the Petitioner's TOMIS report listing seven felony convictions. Trial

counsel discussed the prior convictions with the Petitioner and expressed concern about the Petitioner being classified as a career offender.

When questioned about the State's failing to file a notice of enhanced punishment ten days prior to the Petitioner entering his guilty plea, trial counsel answered that the ten day notice was for trial. Post-conviction counsel read Tennessee Code Annotated section 40-35-202(a) to trial counsel, who then acknowledged that he did not know that the ten-day notice also applied to entry of a guilty plea. Trial counsel stated that, based on the seven felony convictions listed in the Petitioner's TOMIS report, "it appeared to me that he would have been a career offender, or could possibly be a career offender." When further questioned about the seven listed felonies, trial counsel agreed that the Petitioner could have been classified as a persistent offender but not a career offender if sentenced for a Class C felony.

Trial counsel said that he met with the Petitioner two times in jail before the entry of the plea. When questioned about the jail logs which listed only one visit, trial counsel stated, "I believe I met with [the Petitioner] twice, but it may have just been once." Concerning what he discussed with the Petitioner, trial counsel stated:

> I recall a discussion that there was a reference in the discovery where he was arrested that day, in the near vicinity where he was arrested, there was a hat located or -- hat and/or gloves and that it was submitted for DNA analysis, but I let him know that we didn't have -- I didn't have that analysis at that point in time.

Trial counsel agreed he did not obtain the DNA analysis before he negotiated the terms of the plea, explaining that "on the day we came to court for the plea cut-off date, I was prepared to ask to extend that plea cut-off. I had already discussed that with [the Petitioner] as well, but he indicated to me that he wanted to enter a guilty plea." Concerning how the plea agreement was negotiated, trial counsel stated:

> I don't recall there being an offer on the table. [The Petitioner] instructed me to go to the D.A. on what he pled guilty to and the sentence that was imposed. He offered that to the State and the State accepted it, even knowing that the DNA analysis was still outstanding.

When questioned about the police report, trial counsel agreed that one of the victims "identified the suspect as a black man wearing a black shirt, a gray beanie and gloves" and "that the suspect dropped a toboggan and a thumb of a glove," and that the officer "located a pair of gloves with the thumb missing on the ground about 25 feet from where [the officer] made contact with [the Petitioner]". Trial counsel explained that he

- 3 -

did not examine the physical evidence because he "anticipated [the Petitioner's] plea cut-off being extended," but the Petitioner "requested to enter a guilty plea" on the plea cut-off date.

Trial counsel was asked if he challenged the "show-up identification procedure" in which the fourteen-year-old victim was taken by the police to where the Petitioner was apprehended and asked if the Petitioner was the person who assaulted her and her mother. Trial counsel admitted that, although the "show-up identification procedure" is "frowned upon" and "highly suggestive," he never challenged the identification before negotiating a plea agreement.

On cross-examination, trial counsel agreed that it was not uncommon for an investigation to be cut short by a guilty plea. Trial counsel reviewed a letter that had been mailed to the District Attorney General before he was appointed. He stated that the letter had been provided in discovery. The letter was addressed to the Assistant District Attorney General handling the Petitioner's case, had a return address for the Petitioner at the Madison County jail, and was signed "Tonnie L. Jelks." The letter discussed the Petitioner's family, four-year-old son, and the Petitioner's strong work history. The letter asked the State to "keep [the Petitioner's] charge as attempted robbery, and to give me a fair and reasonable plea[.]" The letter states that "I can talk to you more when I receive a lawyer[.]"

The Petitioner testified that he first met trial counsel on May 1, 2015, at the jail. Trial counsel told the Petitioner that he had watched the video and that he would "share it with [the Petitioner] out at the jail." He said that trial counsel met with him for thirteen seconds based on the computerized "jail logs." The next time he saw trial counsel was on May 11 in a room at the courthouse. He said they discussed the State's first plea offer—fifteen years at sixty percent. When asked what he told trial counsel about the offer, the Petitioner stated, "I didn't tell him nothing [sic]. I knew I wasn't a career offender." The Petitioner said that, after he rejected the offer, the State offered ten years as a career offender and that he again rejected the offer. He said that the final offer was ten years as a persistent offender. He claimed that trial counsel did not discuss the elements of the offenses, lesser-included offenses, the medical proof, or range classification with him. He said that trial counsel told him that, if he rejected the offer and went to trial, he would "get careered out[.]" The Petitioner agreed that trial counsel discussed extending the plea deadline but denied that he stated that he wanted "to plead today." The Petitioner explained:

How [trial counsel] came, he said if I take that 10 years at 45, you won't even have to worry about the DNA or nothing showing up no more. That

- 4 -

was my understanding. So that's why I was confused. So that's why I went on and took that 10-year sentence.

The Petitioner further explained, "I was trying to get a lesser[-]included offense, and [trial counsel] said, 'Well that offer stand[s]. That 10 years at 45 stand[s], but if you don't take that, it's gonna be 15 years at 60 percent.' So I was lost. I didn't know."

When asked if he would have pleaded guilty if he had known at the time what he knows now, the Petitioner stated, "No, sir, I would have [gone] to trial. I wouldn't -- I believe I would have [come] out better with this 10 years. I would have [come] out with a lesser[-]included offense or it could have been possibly thrown out at trial."

On cross-examination, the Petitioner admitted that he had a prior conviction for aggravated assault for which he was sentenced to ten years and a prior conviction for robbery for which he was sentenced to six years. He agreed his TOMIS report was included in the response to his pro se motion to reduce bond and that the report listed seven prior felony convictions. When questioned about sending the letter to the District Attorney General, the Petitioner stated:

> No, sir, I don't remember that. I don't even -- I don't even see that in my motion. I don't even recall that letter. That is not my -- To my knowledge, as far as I can see it, that's not my handwriting."
>
> . . .
>
> No, sir, it don't [sic] look like my handwriting. Can I take a look at that if you don't mind, sir? I hadn't saw [sic] that. I haven't saw [sic] that.

The Petitioner claimed that he did not ask for trial counsel to initiate plea negotiations and that he did not want a plea offer from the State for attempted aggravated robbery. He was then asked, "[I]sn't it true the real reason you're here is because you want a better plea bargain?" The Petitioner answered, "I'd take a lesser[-]included offense."

Concerning the guilty plea colloquy by the trial court, the State engaged in the following dialogue with the Petitioner:

> Q. And he asked if you'd gone over the sentencing form.
>
> A. Yes, sir.

Q.  And he asked if you understood it.

A.  Yes, sir.

Q.  What did you tell him?

A.  I said, "Yes, sir."

Q. Told him you understood it then.

A.  Yes, sir.

Q.  And he asked if you were satisfied with [trial counsel].

A. Yes, sir.

Q.  What did you tell him?

A.  Said, "Yes, sir."

Q.  Yes, sir, you were, weren't you?

A.  Yes, sir, at that time, 'cause I didn't understand the law.  Until I did my own research, I didn't understand the law.

Q.  Now, he asked if you'd gone over the indictment with [trial counsel], didn't he?

 A.  I think; I'm not for sure.

Q.  Well, the question is, "Have you gone over each count of the indictment with your attorney," and your response was, "Yes, sir," you wouldn't dispute that, would you?

A.  I didn't understand it.

Q.  You didn't understand what [the trial judge] meant by –

A.  Not at the time.

Q. You didn't understand what [the trial judge] meant when he asked, "Have you gone over each count of the indictment with your attorney?"

A. No, sir.

Q. What part of that is confusing to you?

A. I was confused. I didn't understand the law. He was my attorney. I would have thought he was leading me in the right direction. I didn't understand it 'til I did my own research, what it mean[t]. He didn't go over nothing [sic] with me. If he would have [gone] over it with me, I would have never [taken] this plea bargain, sir.

Q. Now the question, "Are you satisfied with your attorney," your statement is you didn't understand that?

A. No, sir, I didn't understand that.

Q. You don't know what the word "satisfied" means?

A. Yeah, I know what satisfied means.

Q. Do you know what an attorney is?

A. I didn't understand.

Q. Do you know what an attorney is?

A. Yes, sir.

Q. And do you know who [trial counsel] was?

A. He [was] supposed to ha[ve] been my attorney at the time.

Q. What part of that question then is confusing to you?

A. I just didn't understand. He didn't go over nothing [sic] with me.

Q. And the question was, "Mr. Jelks, have you gone over with your attorney what's contained in each two counts of the indictment," and your response was, "Yes, sir." Do you recall that?

A. I guess.

Q. Were you confused about that, too?

A. Yes, sir.

Q. So did you know who you were, Mr. Jelks?

A. Yes, sir, I know who I am.

Q. And you knew what the word "attorney" -- you didn't know what that meant at the time. You've already told us –

A. I knew what the word "attorney" mean[t].

Q. And you know what the indictment was.

A. No, not really, 'til I went over and did my own research on that.

Q. You didn't know what an indictment was.

A. No, sir.

Q. So when [the trial judge] handed you the indictment on the day you were arraigned, you didn't have a clue what you were getting.

A. No, sir. That's when he appointed that lawyer to me, to explain to me what it all mean.

Q. So you've been to court and pled guilty seven times and you hadn't figured out what an indictment is.

A. No, sir.

After argument by counsel, the post-conviction court placed certain findings on the record. The court found that trial counsel was "very truthful and candid whether he did or did not do something in this case[.]" Concerning the Petitioner's credibility, the court stated:

> I have some issue with determining the credibility of [the Petitioner] because I note for the record that when it came down to something that might, in his opinion, injure his case today, he got real foggy with his memory and didn't remember this, didn't remember that. He even got down to the point of testifying that he didn't understand any of these questions. He didn't even know what an indictment was, and I was there on the day I explained this one to him, and he has seven prior felonies. I really find [a] substantial amount of issues with [the Petitioner's] credibility today.
>
> . . .
>
> I can point out several other things that go to his credibility, the letter for example. He filed a pro se letter on a bond issue which wasn't his handwriting but had his signature supposedly on it, and there was a hearing on that bond pro se motion, and that was -- well, it was filed February 27th. It's in the file, Motion for Bond Reduction, whether it was a hearing or not. I don't have that in front of me. But I compared that signature to the signature on the letter that was sent to the D.A.'s office, and there [are] substantial similarities. [The Petitioner] is bound and determined that wasn't his letter to the D.A. The return address on the letter is the jail. There's been no proof that somebody else in that jail would just take it upon themselves to try to sign like [the Petitioner] and send a letter to the D.A., putting the jail as the return address, trying to negotiate some plea offer in this case. Again, it goes to [the Petitioner's] credibility as he testifies, and I have to evaluate all of his testimony. So that was another issue.
>
> And then just to be totally blank on anything discussed at the time of his plea, he just didn't understand anything. He didn't understand the charges, didn't understand what an indictment was. He basically didn't understand a thing, and that's just of great concern to the Court.

The post-conviction court then found "that [the Petitioner] intentionally, knowingly[,] personally[,] and voluntarily made a decision to enter his plea of guilty." The court found, based on the transcribed plea colloquy, that "[the Petitioner] was fully advised of everything. He was advised of the specifics of the offense. He was advised as to the range he was being sentenced under pursuant to his plea agreement if [the trial court] approved it."

Concerning the aggravating element of the attempted robbery, serious bodily injury, the post-conviction court noted that the charging affidavit "allege[d] there was a broken bone in her hand, there was a concussion, a small brain hemorrhage" and that the affidavit was provided to trial counsel during discovery. The post-conviction court found that "[trial counsel] was doing the best he [could] to get [an acceptable plea agreement] worked out quickly" because "that was what [the Petitioner] wanted done." The post-conviction court found that trial counsel was not deficient and that the representation provided did not fall "below the standard required."

*Written Order Dismissing Post[-]Conviction Petition*

The post-conviction court entered a written order dismissing the post-conviction petition. The written order restated many of the oral findings. The post-conviction court again accredited the testimony of trial counsel and again found that the Petitioner "made several claims in his testimony that are extraordinary and cause the [post-conviction c]ourt great concern about the credibility of his testimony at the hearing." The post-conviction court also found that the Petitioner "was very selective as to the things he could remember and understand" and "had no real difficulty in remembering things that he thought would help his petition[.]" The post-conviction court accredited the testimony of trial counsel "when he testifie[d] that he was in the process of preparing the case for the [P]etitioner when the [P]etitioner insisted on a plea agreement with the [S]tate." The post-conviction court found that trial counsel, at the request of the Petitioner, obtained a plea agreement which was acceptable to the Petitioner, "thus terminating the need for further investigation into the matters of waiting for the results of a DNA test or extensive investigation into the medical records or physical evidence." The post-conviction court accredited the testimony of trial counsel "when he state[d] that he would have thoroughly investigated the matter and filed such motions as were needed had the case gone to trial but that was simply not the desire[] of the [Petitioner]." The post-conviction court stated that it had "examined the guilty plea form submitted by the [P]etitioner as well as the plea transcript" and that the trial court:

> was very careful to insure that the plea was fully understood and that the [Petitioner] fully understood every right that he was giving up and the [Petitioner] assured the Court in every response that he knew and

understood what he was doing that he was satisfied with trial counsel and that it was his desire to accept the plea agreement submitted to him by the State.

## Analysis

The Petitioner claims that his guilty plea was not knowingly and voluntarily entered as a result of trial counsel's ineffective assistance and because "the [S]tate did not file a notice of intent to seek enhanced punishment as required by Tennessee Code Annotated §40-35-202." Specifically, the Petitioner claims that trial counsel "incorrectly advised [the Petitioner] of his offender classification," "failed to investigate proof to substantiate the element of 'serious bodily injury,'" "failed to inform [the Petitioner] of the elements of his conviction offense," and "failed to challenge the show-up identification procedure." The State argues that the Petitioner failed to prove that he received ineffective assistance of counsel and that, if there was any deficiency in trial counsel's representation, the Petitioner failed to prove that the deficiency caused prejudice to the Petitioner. The State also claims that the Petitioner failed to prove that his guilty plea was not knowingly and voluntarily entered. We agree with the State.

### *Standard of Proof*

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. See *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). "[A]ppellate courts are bound by the post-conviction court's underlying findings of fact unless the evidence preponderates against them." *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). When reviewing the post-conviction court's factual findings, this court does not reweigh the evidence or substitute its own inferences for those drawn by the post-conviction court. *Id*.; *Fields*, 40 S.W.3d at 456 (citing *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." *Fields*, 40 S.W.3d at 456 (citing *Henley*, 960 S.W.2d at 579); *see also Kendrick*, 454 S.W.3d at 457. The post-conviction court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick*, 454 S.W.3d at 457.

### *Involuntary and Unknowing Plea*

When reviewing a guilty plea, this court looks to both the federal standard as announced in the landmark case *Boykin v. Alabama*, 395 U.S. 238 (1969), and the state

standard as announced in *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977), *superseded on other grounds* by Tenn. R. Crim. P. 37(b) and Tenn. R. App. P. 3(b). *Don Allen Rodgers v. State*, No. W2011-00632-CCA-R3-PC, 2012 WL 1478764, at *5 (Tenn. Crim. App. April 26, 2012) (citing *State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999). Under the federal standard, there must be an affirmative showing that the plea was "intelligent and voluntary." *Boykin*, 395 U.S. at 242. Likewise, the Tennessee Supreme Court has held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e. that he has been made aware of the significant consequences of such a plea . . . ." *Mackey*, 553 S.W.2d at 340. "[A] plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . ." *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting *Boykin*, 395 U.S. at 242-43).

In order to determine whether a plea is intelligent and voluntary, the trial court must "canvass[] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin*, 395 U.S. at 244. The trial court must look to several factors before accepting a plea, including:

> [T]he relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship*, 858 S.W.2d at 904 (citing *Caudill v. Jago*, 747 F.2d 1046, 1052 (6th Cir. 1984); *see also Howell v. State*, 185 S.W.3d 319, 330-31 (Tenn. 2006). Once the trial court has conducted a proper plea colloquy, it discharges its duty to assess the voluntary and intelligent nature of the plea and creates an adequate record for any subsequent review. *Boykin*, 395 U.S. at 244.

Statements made by a petitioner, his attorney, and the prosecutor during the plea colloquy, "as well as any findings made by the [trial court] accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Statements made in open court carry a strong presumption of truth, and to overcome such presumption, a petitioner must present more than "conclusory allegations unsupported by specifics. . . ." *Id.* at 74.

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove two factors: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven in order for a court to grant post-conviction relief. *Strickland*, 466 U.S. at 687; *Henley*, 960 S.W.2d at 580; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley*, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the *Strickland* analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)); *see also* Goad, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688); *see also Baxter*, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. *Goad*, 938 S.W.2d at 370. Therefore, under the second prong of the *Strickland* analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted).

A substantially similar two-prong standard applies when the petitioner challenges counsel's performance in the context of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58

(1985); *Don Allen Rodgers v. State*, No. W2011-00632-CCA-R3-PC, 2012 WL 1478764, at \*4 (Tenn. Crim. App. April 26, 2012).   First, the petitioner must show that his counsel's performance fell below the objective standards of reasonableness and professional norms.  *See Hill*, 474 U.S. at 58-59.   Second, "in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would have not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Statement that Petitioner Could Be a Career Offender

The Petitioner contends that trial counsel was ineffective because he incorrectly advised the Petitioner that he could be classified as a career offender.  Although the Petitioner's overall testimony was contradictory, the Petitioner specifically stated during direct examination, "I knew I wasn't a career offender."  Trial counsel testified that, before the State made any plea offer, the Petitioner instructed trial counsel to offer a plea to attempted aggravated robbery in exchange for a ten-year sentence to be served as a persistent offender.  The post-conviction court accredited trial counsel's testimony.  Even if trial counsel was in error in advising the Petitioner that he could be classified as a career offender, that error did not prejudice the Petitioner.[1]  Accordingly, the Petitioner is not entitled to relief on this issue.

Serious Bodily Injury Element

The Petitioner claims that trial counsel's representation was deficient because he "failed to investigate proof to substantiate the element of 'serious bodily injury[.]'" Trial counsel testified that he would have argued this issue to the jury if the case had proceeded to trial but that preparation was cut short by the Petitioner's insistence on obtaining a plea

---

[1] Based on the Petitioner's TOMIS report, trial counsel was incorrect about the Petitioner being a career offender for a Class C felony attempted aggravated robbery.  However, trial counsel appears to have been correct that the Petitioner would have been a career offender if convicted of Class D felony attempted robbery – the offense for which the Petitioner requested a plea offer in his letter to the district attorney.  The Petitioner's TOMIS report shows convictions for Class C felony aggravated assault and Class C felony aggravated burglary with the same offense date of May 2, 2001; a conviction for Class C felony robbery with an offense date of September 22, 1996; a conviction for Class D felony burglary and Class E felony theft of property both with an offense date of November 2, 1995; a conviction for Class C felony Schedule II drugs: cocaine less than one half gram with an offense date of April 4, 1994; and a conviction for Class E felony reckless endangerment – deadly weapon involved with an offense date of December 24, 1992.  If the Petitioner had been convicted of the lesser-included offense of Class D felony attempted robbery, he had the requisite prior felony convictions to have been classified as a career offender.  The sentence for a career offender convicted of a Class D felony is twelve years at sixty percent, a significantly longer sentence than the sentence of ten years at forty-five percent the Petitioner received as a result of plea negotiations.

agreement. As we discussed in footnote 1, if the jury had found that the victim did not sustain serious bodily injury and therefore found the Petitioner guilty of Class D felony attempted robbery, the Petitioner would have then been at risk of being classified as a career offender in which case he would have faced a mandatory sentence of twelve years at sixty percent. That sentence would require the Petitioner to serve seven point two (7.2) years before reaching his release eligibility date. If the Petitioner had been convicted of Class C felony attempted aggravated robbery and found to be a persistent offender, he would have faced a minimum sentence of ten years and a maximum sentence of fifteen years at forty-five percent. The minimum sentence would require the Petitioner to serve four point five (4.5) years and the maximum sentence would require the Petitioner to serve six point eight (6.8) years before reaching his release eligibility date.[2] If trial counsel had been successful in convincing a jury that the victims did not suffer serious bodily injury, the Petitioner was at risk of receiving a longer sentence. Even if trial counsel was ineffective in failing to investigate the victim's injuries, the Petitioner was not prejudiced. The Petitioner is not entitled to relief on this claim.

Failure to Inform as to Elements of the Offense

Trial counsel testified that he explained the elements of the offense to the Petitioner. The post-conviction court accredited counsel's testimony. The Petitioner has not proven that trial counsel was deficient in failing to explain the elements of the offense. Accordingly, he is not entitled to relief as to this claim.

---

[2] This "peculiarity" in career offender classification results from the alignment of Class C felonies with Class A and Class B felonies in Tennessee Code Annotated section 40-35-108(a)(1) and the grouping of Class D and Class E felonies together in Section 40-35-108(a)(3). Section 40-35-108(a) provides:

> (a) A career offender is a defendant who has received:
>
> (1) Any combination of six (6) or more Class A, B or C prior felony convictions, and the defendant's conviction offense is a Class A, B or C felony;
>
> (2) At least three (3) Class A or any combination of four (4) Class A or Class B felony convictions if the defendant's conviction offense is a Class A or B felony; or
>
> (3) At least six (6) prior felony convictions of any classification if the defendant's conviction offense is a Class D or E felony.

- 15 -

Failure to Challenge "Show-up" Identification

Trial counsel testified that he planned to obtain a continuance of the plea cut-off date but that the Petitioner insisted on trying to obtain a plea agreement. For this reason, trial counsel's investigation was cut short, and a plea was entered before any motions could be filed. Trial counsel's failure to challenge the "show-up" identification was directly impacted by the Petitioner's insistence upon entering a plea. Even if trial counsel was deficient in not challenging the show-up identification, based on the overwhelming proof in this case, the Petitioner has not shown that he was prejudiced by the deficiency. The Petitioner is not entitled to relief on this claim.

*Failure of the State to File Enhancement Notice*

The Petitioner claims that his guilty plea was unknowing and involuntary because the State failed to file a notice of intent to seek enhanced punishment, as required by Tennessee Code Annotated § 40-35-202, before he entered his guilty plea. Tennessee Code Annotated section 40-35-202(a) states:

> If the district attorney general believes that a defendant should be sentenced as a multiple, persistent or career offender, the district attorney general shall file a statement thereof with the court and defense counsel not less than ten (10) days before trial or acceptance of a guilty plea; provided, that notice may be waived by the defendant in writing with the consent of the district attorney general and the court accepting the plea. The statement, which shall not be made known to the jury determining the guilt or innocence of the defendant on the primary offense, must set forth the nature of the prior felony convictions, the dates of the convictions and the identity of the courts of the convictions. The original or certified copy of the court record of any prior felony conviction, bearing the same name as that by which the defendant is charged in the primary offense, is prima facie evidence that the defendant named in the record is the same as the defendant before the court, and is prima facie evidence of the facts set out in the record.

Tenn. Code Ann. § 40-35-202(a). According to the accredited testimony of trial counsel, the State had not made a plea offer when trial counsel appeared on the plea cut-off date. Because the DNA test results had not been completed, trial counsel intended to seek an extension of the time the Petitioner had to accept a plea offer from the State. The Petitioner wanted to plead that day and made a plea offer to the State, which the State accepted. In discussing section 40-35-202(a), our supreme court in *State v. Adams* noted that "[w]e have previously held that non-compliance with the rule of procedure requiring

notice to be filed at least ten days before trial will not bar enhanced sentencing in the absence of prejudice." 788 S.W.2d 557, 558 (Tenn. 1990) (citing *State v. Stephenson*, 752 S.W.2d 80 (Tenn. 1988) (construing Tenn. R. Crim. P. 12.3)). The *Adams* court stated:

> The purpose of subsection (a) is to provide fair notice to an accused that he is exposed to other than standard sentencing. It is intended to order plea-bargaining, to inform decisions to enter a guilty plea, and to aid to some extent trial strategy. Notice is important not only in preparation for a sentencing hearing, but in evaluating the risks and charting a course of action before trial. The Legislature has expressly placed the responsibility of notice upon the district attorney, along with the discretion to seek enhanced sentencing.

*Id.* at 559. Even though the court determined that the defendant in *Adams* did not have "constructive notice" at the time of trial, the court held "when the State has substantially complied with Section 40-35-202(a), an accused has a duty to inquire about an ambiguous or incomplete notice and must show prejudice to obtain relief." *Id.* at 559.

In our case, at the time the Petitioner entered his guilty plea, he had received and trial counsel had examined the district attorney general's response to the Petitioner's pro se motion for reduction of bond, which included a photocopy of the Petitioner's TOMIS report showing seven prior felony convictions. Because the Petitioner insisted on entering a plea on the plea cut-off date and because the Petitioner had notice of his prior seven felony convictions, we hold that the district attorney's response served as constructive notice for the purposes of Tennessee Code Annotated section 40-35-202(a), that the State substantially complied with the requirements of section 40-35-202(a), and that there was no prejudice to the Petitioner by the State's failure to strictly comply with the statute. Accordingly, the Petitioner has not established that his guilty plea was unknowing and involuntary based on the State's failure to file a notice of intent to seek enhanced punishment, as required by Tennessee Code Annotated § 40-35-202.

## Conclusion

Accordingly, Petitioner is not entitled to relief in this appeal. The post-conviction court's judgment dismissing the petition for post-conviction relief is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE